51 N.J. Super. 167 (1958)
143 A.2d 799
JOSEPH DiMICELE, ET AL., CLAIMANTS-APPELLANTS,
v.
GENERAL MOTORS CORPORATION AND BOARD OF REVIEW OF DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1958.
Decided July 10, 1958.
*168 Before Judges STANTON, HALL and GAULKIN.
Mr. Albert L. Kessler argued the cause for the appellants (Messrs. Weiner, Weiner & Glennon, attorneys).
Mr. Elmer J. Bennett argued the cause for the respondent General Motors Corporation (Messrs. Carpenter, Bennett, Beggans & Morrissey, attorneys; Mr. Laurence Reich on the brief).
Mr. Edward A. Kaplan argued the cause for the respondent Board of Review (Mr. Clarence F. McGovern, attorney and on the brief).
The opinion of the court was delivered by STANTON, S.J.A.D.
This is an appeal by the claimants from a decision of the Board of Review holding them ineligible for benefits during the period beginning June 25, 1956 and ending July 8, 1956.
The facts are not in dispute. The employer, General Motors Corporation, closed its plant at Linden for the purpose of taking inventory from Thursday, June 28, to and including Wednesday, July 4, 1956. This resulted in a mass layoff. Adequate notice of it was given in advance, the affected *169 employees were instructed to return to work on July 5 and they did so. The claimants were all regularly employed on the basis of a payroll period of seven consecutive days beginning on Monday and ending on Sunday. The time with which we are concerned here is within the weekly payroll periods ending on July 1 and July 8. The claimants worked on June 25, June 26 and June 27 and each of them received for the payroll week ending July 1, 1956 wages in excess of their weekly benefit rate of $35. During the payroll week ending July 8 they worked on July 5 and July 6. Under a collective bargaining agreement then in force July 4 was a paid holiday and they received pay for that day in varying amounts according to their status, ranging between $16.40 and $18.80. Consequently, they received for the payroll week ending July 8 wages in excess of the weekly benefit rate aforesaid. The claimants had waiting week credit previously established in their benefit year. They filed claims for benefits promptly on June 28, the first day of the lay-off, for the week of June 28, that is to say, for the seven-day consecutive period commencing June 28 and ending July 4, during which they performed no services and received remuneration of less than their weekly benefit rate.
While compensation is payable for partial as well as total unemployment, the statute does not specifically define each type of unemployment. Both are embraced in the following definition found in N.J.S.A. 43:21-19(m):
"Unemployment.
(1) An individual shall be deemed `unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate, * * *."
Pursuant to the authority given to it by the Legislature in N.J.S.A. 43:21-11(a), the Division of Employment Security adopted the following regulation:
"22.01 Weeks of Unemployment:
(a) Week of Total Unemployment. A week in which an individual performs no services and with respect to which he receives no remuneration.
*170 (b) Week of Partial Unemployment. A week in which an individual performs some services and/or earns less than * * * an amount equal to his weekly benefit rate * * *."
The statute deals with unemployment and benefits on a weekly basis. In N.J.S.A. 43:21-19(q) we find the following definition:
"`Week' means such period or periods of seven consecutive days ending at midnight, as the division may by regulation prescribe."
On this subject the Division adopted this regulation:
"22.02 Benefit Weeks:
(a) A benefit week with respect to any partially unemployed individual who is employed by a regular employer or employing unit on the basis of a payroll period of seven consecutive days and who works less than his normal customary full-time hours for such employer or employing unit because of lack of full-time work shall coincide with such payroll period.
(b) A benefit week with respect to any partially unemployed individual who is employed by a regular employer or employing unit on other than a weekly basis shall be any seven-consecutive-day period of unemployment chosen by the individual; provided that no day of unemployment shall occur in more than one such week.
(c) A benefit week with respect to any other individual shall be any seven-consecutive-day period of unemployment chosen by the individual; provided, that no day of unemployment shall occur in more than one such week."
The claimants sought benefits for a week of total unemployment under Regulations 22.01 (a) and 22.02 (c) on the ground that they performed no services and received no remuneration during the seven consecutive days commencing June 28 and ending July 4. It is true that they performed no services during that period; however, they received some remuneration with respect to it  namely the holiday pay for July 4. It has been decided in our courts and elsewhere under our statute and a similar one that holiday pay and vacation pay constitute such remuneration. Draus v. Board of Review, 13 N.J. Super. 231 (App. Div. 1951); Battaglia v. Board of Review, 14 N.J. Super. 24 (App. Div. 1951); *171 General Motors Corporation v. Michigan Unemployment Compensation Commission, 331 Mich. 303, 49 N.W.2d 305 (Sup. Ct. 1951).
Our conclusion that holiday pay constitutes remuneration is likewise dispositive of any claims for partial unemployment benefits for the two payroll weeks in question, because as shown above, with the inclusion of the holiday pay the claimants all received in excess of $35 for each of the two benefit weeks.
The claimants criticize Regulation 22.02(a) which applies to their situation because it provides that the benefit week described therein shall coincide with the payroll period of seven consecutive days. This is the regulation that controls in the situation in which the claimants find themselves. As shown above, the Division had statutory authority to adopt the regulations. There is a presumption in favor of their validity. They will not be set aside unless they clearly transgress or are plainly and palpably inconsistent with the statute. The burden of proof is upon the claimants and they have not met it. Grenewicz v. Ligham, 34 N.J. Super. 1, 9 (App. Div. 1955); Lane v. Holderman, 40 N.J. Super. 329, 335 (App. Div. 1956), affirmed with modification 23 N.J. 304 (1957); Daughters of Miriam Home, etc. v. Legalized Games, etc., 42 N.J. Super. 405, 415 (App. Div. 1956).
Affirmed.